Michael Marrara # 1171151
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, New Jersey 07065

Michael Dotro # 1131899
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, New Jersey 07065

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Case No.: 2:22-cv-02056-ES-ESK
Hon. Esther Salas, U.S.D.J.
Hon. Edward S. Kiel, U.S.M.J.

|  |  |
|---|---|
| MICHAEL MARRARA,<br>MICHAEL DOTRO,<br><br>    Plaintiffs, On behalf<br>of themselves and all those<br>similarly situated.<br><br>        v.<br><br>THE STATE OF NEW JERSEY,<br>In its Official Capacity;<br>PHILIP D. MURPHY,<br>In his Official Capacity;<br>STEPHEN SWEENEY,<br>In his Official Capacity;<br>CRAIG COUGHLIN,<br>In his Official Capacity;<br>JOHN DOES 1-10,<br>In his Official Capacity;<br>JANE DOES 1-10,<br>In her Official Capacity;<br><br>        Defendants. | CIVIL ACTION<br><br><br>**AMENDED CLASS ACTION**<br>**COMPLAINT AND JURY**<br>**TRIAL DEMANDED** |

## TABLE OF CONTENTS

a. Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Michael Marrara . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. Michael Dotro. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C. Covid-19 Legislation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    D. Exhaustion of Administrative Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI. Injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VII. Class Action Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A. The General Prerequisites to Class Certification, and Conditions to Maintain, are Present as Set Forth in Plaintiffs' Amended Class Action Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2. Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        3. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        4. Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        5. Predominance and Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            a. Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            b. Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                1. Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B. Notice to Class Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C. Class Action Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VIII. Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

A. Count I
Violation of Equal Protection within the Civil Rights Act,
N.J.S.A. § 10:6-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B. Count II
Violation of Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

C. Count III
Violation of Double Jeopardy and the Ex Post Facto Clause . . . . . . . . . . . . . . . 28

D. Count IV
Violation of the Administrative Procedure Act, N.J.S.A. § 52:14B1-B15 . . . . . 33

IX. Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

X. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

Baby Neal v. Casey,
    43 F.3d 220 (3d Cir. 2001) ............................................................ 9

Brecher v. Republic of Argentina,
    806 F.3d 22 (2d Cir. 2015) ........................................................... 15

California Dep't of Corrections v. Morales,
    514 U.S. 499 (1995) ................................................................. 31

City of Cleburne v. Cleburne Living Ctr.,
    473 U.S. 432 (1985) .............................................................. 20, 26

Coady v. Vaughn,
    251 F.3d 480 (3d Cir. 2001) .......................................................... 25

Collins v. Youngblood,
    497 U.S. 37 (1990) .................................................................. 32

Delgozzo v. Kenny,
    266 N.J. Super. 169 (App. Div. 1993) ................................................... 8

Doe v. Poritz,
    142 N.J. 1 (1995) ................................................................. 26, 31

Englewood Cliffs v. Englewood,
    257 N.J. Super. 413 (App. Div. 1992) .................................................. 19

Gallano v. Running,
    139 N.J. Super. 239 (App. Div. 1976) .................................................. 10

Hubbard v. Taylor,
    399 F.3d 150 (3d Cir. 2005) .......................................................... 30

Iliadis v. Wal-mart Stores, Inc.,
    191 N.J. 88 (2007) .................................................................. 13

In re Cadillac,
    93 N.J. 412 (1983) .................................................................. 14

In re NASDAQ v. Market-Makers Antitrust Litig.,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...................................................... 13

Ingraham v. Wright,
43 U.S. 651 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Jean v. Buckwell Univ.,
2021 U. S. Dist. Lexis 73384 (3d Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, *passim*

Katz v. Blanche Corp.,
496 F.2d 747 (3d. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Kennedy v. Mendoza-Martinez,
372 U.S. 144 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

Labella Winnetka v. Vill. Of Winnetka,
628 F.3d 937 (7th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Laufer v. U.S. Life Ins. Co.,
385 N.J. Super. 172 (App. Div. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McBean v. the City of New York,
228 F.R.D. 487 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Newman v. Beard,
617 F.3d 775 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Nixon v. Admin. of Gen. Servs.,
433 U.S. 425 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Saldana v. City of Camden,
252 N.J. Super. 188 (App. Div. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Stewart v. Abraham,
275 F.3d 220 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Halper,
490 U.S. 435 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 31

Wetzel v. Liberty Mutual Ins. Co.,
508 F.2d 239 (3d. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


**Federal Rules of Civil Procedure**
Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Fed. R. Civ. P. 23(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Fed. R. Civ. P. 23(a) *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17, 38

Fed. R. Civ. P. 23(c)(2)(B) *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17
Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, *passim*
Fed. R. Civ. P. 23(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 38
Fed. R. Civ. P. 23(g)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11


**U.S. Constitution**

Art. I, § 9, cl. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Art. I, § 10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 27
Art. I, § 10, cl. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 32
28 U.S.C.S. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
28 U.S.C.S. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
42 U.S.C.S. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, *passim*
5th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32
14th Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, *passim*


**New Jersey Executive Orders**

No. 103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
No. 244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
No. 280 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


**New Jersey Constitution**

Art. I, para. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, *passim*
Art. I, para. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 33
Art. I, para. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, *passim*
Art. IV, § 4, para. 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, *passim*
Art. IV, § 7, para. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, *passim*
Art. V, § 1, para. 14(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, *passim*


**New Jersey Statutes**

N.J.S.A. § 2C:11-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5
N.J.S.A. § 2C:14-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
N.J.S.A. § 2C:47-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
N.J.S.A. § 10:6-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, *passim*
N.J.S.A. § 30.4-123.100(1)(a) *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19
N.J.S.A. § 30.4-123.100(1)(b) *et seq* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
N.J.S.A. § 30.4-123.100(1)(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, *passim*
N.J.S.A. § 30.4-123.100(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
N.J.S.A. § 30.4-123.100(1)(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 *passim*
N.J.S.A. § 52:14B1-B15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## I – INTRODUCTION

1.    [NEW] Michael Marrara and Michael Dotro (hereinafter collectively, "Plaintiffs") hereby present this Amended Class Action Complaint against Defendants, being the State of New Jersey, Philip D. Murphy, Stephen Sweeney, Craig Coughlin, John Does 1-10 and Jane Does 1-10 (hereinafter collectively, "Defendants"), and Plaintiffs, by way of this Complaint, are exercising their Constitutional Rights on behalf of themselves, and a class of all those similarly situated (hereinafter "the class").

2.    [NEW] The Action rightfully claims that the Defendants violated the New Jersey and U.S. Constitutions, the New Jersey Civil Rights Act, N.J.S.A. § 10:6-2 (hereinafter "the Civil Rights Act"), 42 U.S.C.S. § 1983 and the New Jersey Administrative Procedures Act, N.J.S.A. § 52:14B1-B15 (hereinafter "NJAPA"), through the enactment of the New Jersey Senate Bill No. 2519 (hereinafter "Covid-19 Legislation"), and furthermore, the Plaintiffs' claims state the Covid-19 Legislation awards up to eight (8) months of Public Health Emergency Credits (hereinafter "PHEC") off their prison sentences, however, unconstitutional exclusions within the Covid-19 Legislation awarded the PHEC to only a select group of inmates.

## II – [NEW] JURISDICTION

3.    [NEW] Due to Plaintiffs' federal question, this Court has jurisdiction, pursuant to 28 U.S.C.S. § 1331.

4.    [NEW] Plaintiffs' state claims allow for this Court to have supplemental jurisdiction pursuant to 28 U.S.C.S. § 1367.

## III - STATEMENT OF FACTS

5.  This 42 U.S.C.S. § 1983 Civil Action commences with the adoption and enactment of the Covid-19 Legislation, as signed into law, violating Plaintiffs' Constitutional and Civil Rights when it deprived them of their qualified rights to PHEC, due to sentence length and/or certain convictions, and furthermore, the signing and execution of Executive Order No. 244 that ended the public health emergency, which effectively concluded the awarding of said credits.

## IV – PARTIES

6.  Plaintiff Michael Marrara is a citizen of the State of New Jersey, and currently incarcerated at East Jersey State Prison (hereinafter "EJSP").

7.  Plaintiff Michael Dotro is a citizen of the State of New Jersey, and currently incarcerated at EJSP.

8.  [NEW] The State of New Jersey, being sued in its official capacity, acted under the color of state and federal law at the time of the Covid-19 Legislation being signed into law.

9.  [NEW] Defendant Philip D. Murphy (hereinafter "Governor Murphy"), being sued in his official capacity, is the current governor of the State of New Jersey, and was so at the time of the Covid-19 Legislation being signed into law.

10. [NEW] Defendant Stephen Sweeney, being sued in his official capacity, is the former President of New Jersey Senate, but held that office at the time of the Covid-19 Legislation being signed into law.

11. [NEW] Defendant Craig Coughlin, being sued in his official capacity, is the current Speaker of the General Assembly, and was so at the time of the Covid-19 Legislation being signed into law.

2

12. [NEW] Defendants John Does 1-10 and Jane Does 1-10, being sued in their official capacities, were employees, representatives and/or agents of the State of New Jersey at the time of the Covid-19 Legislation being signed into law.

13. [NEW] Each Defendant is being sued in their official capacity, and all times mentioned in this action, each Defendant acted under the color of state and federal law.

## V – FACTS

### A.   Michael Marrara

14. Michael Marrara has been incarcerated at EJSP from July 2018 to present.

15. Plaintiff has been incarcerated since the beginning of the first public health emergency, continuously to present.

16. Plaintiff was denied PHEC due to a sentence exceeding three-hundred and sixty-five (365) days.

### B.   Michael Dotro

17. Michael Dotro has been incarcerated at EJSP from September 2017 to present.

18. Plaintiff has been incarcerated since the beginning of the first public health emergency, continuously to present.

19. Plaintiff was denied PHEC due to a sentence exceeding three-hundred and sixty-five (365) days, and a conviction pursuant to N.J.S.A. § 2C:11-3.

### C.   Covid-19 Legislation

20. March 9, 2020: specific date Governor Murphy signed Executive Order No. 103, declaring a public health emergency – See EO 103, a true and accurate copy which is annexed hereto as "Exhibit A."

3

21. [NEW] September 24, 2020: specific date the New Jersey Senate voted on and passed the Covid-19 Legislation.

22. [NEW] September 24, 2020: specific date the General Assembly voted on and passed the Covid-19 Legislation.

23. October 19, 2020: specific date the General Assembly and State Senate separately adopted the Covid-19 Legislation and Governor Murphy executed said legislation – See New Jersey Senate Bill No. 2519, a true and accurate copy which is annexed hereto as "**Exhibit B**."

24. Pursuant to N.J.S.A. § 30.4-123.100(1)(a) *et seq.*, the commissioner shall award inmates Public Health Emergency Credits if the public health emergency arises as a result of a communicable or infectious disease, and results in substantial modifications to department-wide correctional facility operations.

25. Substantial modifications that transpired, include but are not limited to:

   a. inmates locked in their cells for up to twenty-three (23) hours a day, for months on end,

   b. outdoor recreation limited to twenty-five (25) inmates, and

   c. suspension or closure of the following:

      1. visitation,

      2. religious service,

      3. mess hall,

      4. college program,

      5. high school/GED program,

      6. law library services and

7. indoor recreation. See Affidavit in Support thereof.

26. Pursuant to N.J.S.A. § 30.4-123.100(1)(b) *et seq.*, Public Health Emergency Credits shall be awarded to any inmate who is serving a sentence or receiving jail credits applicable to the sentence, and is scheduled to be released within three-hundred and sixty-five (365) days.

27. Pursuant to N.J.S.A. § 30.4-123.100(1)(d), inmates serving sentences for convictions of N.J.S.A. § 2C:11-3, subsection a. of N.J.S.A. § 2C:14-2, or any offense enumerated in N.J.S.A. § 2C:47-1 shall not receive Public Health Emergency Credits.

28. The Covid-19 Legislation, as put forth in N.J.S.A. § 30.4-123.100(1)(b)(2) and (1)(d), creates a discriminatory animus and prejudice towards inmates scheduled for release subsequent to the aforementioned three-hundred and sixty-five (365) days, and further, certain convictions for their respective crimes.

29. Pursuant to N.J.S.A. § 30.4-123.100(1)(c), Public Health Emergency Credits shall provide further remission from both the maximum and minimum term of sentence at a rate of one-hundred and twenty-two (122) days for each month served during the declared emergency, and said credits shall not exceed two-hundred and forty-four (244) days.

30. June 4, 2021: specific date Governor Murphy signed Executive Order No. 244, wrongfully terminating the PHEC, as they became ephemeral in nature – See EO 244, a true and accurate copy which is annexed hereto as "**Exhibit C**."

31. [NEW] January 11, 2022: specific date Governor Murphy signed Executive Order No. 280, restoring the public health emergency established with the March 9, 2020 signing of

5

EO 103, which is still in effect as of the date on this Complaint – See EO 280, a true and accurate copy which is annexed hereto as "**Exhibit D**."

**D.    [NEW] Exhaustion of Administrative Remedies**

32.   [NEW] Given that the New Jersey Department of Corrections (hereinafter "the NJDOC") is not named in this Complaint, Plaintiffs deemed Exhaustion of Administrative Remedies to be a moot point, however, since removal to this District Court, Plaintiffs abided by the Federal Procedures and completed the following actions.

33.   [NEW] Plaintiff Dotro wrote a Jpay[1] correspondence to Administration, designated EJSP22015070, dated April 24, 2022, requesting "an explanation of why certain inmates were excluded" from receiving the PHEC provided by the Covid-19 Legislation, and "if there are any administrative resources available to remedy this inequality . . ." and on April 27, 2022, prison administration responded that the "Executive Order was issued by the Governor's Office. We do not make the laws" and the correspondence was closed administratively with the inability to grieve – See Dotro Jpay correspondence, a true and accurate copy which is annexed hereto as "**Exhibit E**."

34.   [NEW] Plaintiff Marrara wrote a Jpay correspondence to Administration, designated EJSP22015832, dated May 1, 2022, requesting "an explanation of why certain inmates were excluded" from receiving the PHEC provided by the Covid-19 Legislation, and "if there are any administrative resources available to remedy this inequality . . ." and on May 2, 2022, prison administration responded that the "Governor's office set the guidelines for who would be eligible for the 244 days and who would be excluded. Classification has no control over the Executive Order" and the correspondence was

---

[1] Jpay is the provider for correspondences between inmates and prison officials.

closed administratively with the inability to grieve – See Marrara Jpay correspondence, a true and accurate copy which is annexed hereto as "**Exhibit F**."

35.   [NEW] Plaintiffs have successfully Exhausted all Administrative Remedies.

## VI – INJURIES

36.   The loss of up to eight (8) months of PHEC that have been prejudicially excluded from a select group of male and female inmates, leading to compensatory damages, including but not limited to the emotional, physical distress, ostracism, severance and the loss of pleasure and enjoyment of life, for being incarcerated while suffering the unjust denial of eight (8) months of PHEC, in addition to other damages.

## VII - CLASS ACTION ALLEGATIONS

**A.    The General Prerequisites to Class Certification, and Conditions to Maintain, are Present as Set Forth in Plaintiffs' Amended Class Action Complaint (Fed. R. Civ. P. 23(a) *et seq.*; Fed. R. Civ. P. 23(b)(3))**

**1.   Numerosity – (Fed. R. Civ. P. 23(a)(1))**

37.   Plaintiffs rightfully claim the class is so numerous that joinder of all members is impracticable.

38.   According to the NJDOC website, in 2020 there was a total of 18,477 male and female inmates incarcerated throughout the entire New Jersey State prison system, pragmatically allowing the class to comprise of thousands of members.[2]

39.   A proposed class of eighty-one (81) members is "sufficiently large to meet the numerosity requirement." See Saldana v. City of Camden, 252 N.J. Super. 188, 193 (App. Div. 1991).

---

[2] https://www.state.nj.us/corrections/pdf/offender_statistics/2020/2020_Total.pdf

40. This District court previously found the numerosity requirement is "generally met where the moving party demonstrates that the potential number of plaintiffs exceed 40 . . .' " See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (internal citation omitted).

41. Consequently, Plaintiffs have satisfied the numerosity requirement.

   **2.  Commonality – (Fed. R. Civ. P. 23(a)(2))**

42. Plaintiffs rightfully claim there are questions of law or fact common to the class.

43. Past adjudications ruled that "a single common question is sufficient." See Delgozzo v. Kenny, 266 N.J. Super. 169, 185 (App. Div. 1993) (internal citation omitted).

44. Plaintiffs rightfully claim questions of law or fact common that exist among the class, including but not limited to:

   a.  whether Defendants violated the Civil Rights of Plaintiffs and the class,

   b.  whether Defendants violated the Constitutional Rights of Plaintiffs and the class,

   c.  whether Defendants violated the New Jersey Constitution,

   d.  whether Defendants violated the NJAPA,

   e.  whether Defendants violated the U.S. Constitution, particularly the 5th and 14th Amendments,

   f.  whether Defendants violated the U.S. Constitution, particularly the Ex Post Facto Clause, Double Jeopardy and Bill of Attainder and

   g.  why Defendants chose to prejudicially deem Plaintiffs and the class ineligible for PHEC.

45. [NEW] The class portrayed herein is defined as all male and female inmates currently incarcerated in the State of New Jersey having served a minimum of one (1) month during the initial public health emergency, dated March 9, 2020 through June 3, 2021, or a minimum of one (1) month served during the currently reinstated public health emergency, starting January 11, 2022 and having remained continuously incarcerated until the termination of the current public health emergency, clearly shows questions of law or fact common to that of the Plaintiffs.

46. Courts have ruled that the commonality "requirement may be satisfied by a single common issue," therefore "it is easily met" in most cases. See Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir. 1994).

47. Consequently, Plaintiffs have satisfied the commonality requirement.

### 3.  Typicality – (Fed. R. Civ. P. 23(a)(3))

48. Plaintiffs rightfully claim the claims of the representative parties are typical to the claims of the class.

49. Moreover, "[s]ince the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." See Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 180 (App. Div. 2006).

50. The claims of the class are selfsame to the claims presented herein by the Plaintiffs, since the Defendants' actions affected the livelihood of male and female incarcerated persons, all falling under the umbrella of the New Jersey Prison system.

51. Typicality simply aims to assure that "the named plaintiffs have incentives that align with those" of the class. See Baby Neal, 43 F.3d at 57.

52. Consequently, Plaintiffs have satisfied the typicality requirement.

#### 4. Adequacy of Representation – (Fed. R. Civ. P. 23(a)(4))

53. Plaintiffs rightfully claim that as the representative parties, they will fairly and adequately protect the interest of the class.

54. To meet the requirement, Plaintiffs must satisfy two components: (1) "the interest of the named representative . . . plaintiffs, must be coextensive with the interest of other members of the class" and (2) Plaintiffs attest to "vigorously prosecute . . . that interest, and this will usually require assistance of responsible and able counsel." See Gallano v. Running, 139 N.J. Super. 239, 246 (Law. Div. 1976) (internal citations omitted).

55. Plaintiffs understand and accept their duty to protect the class, having a pending Motion for appointment of counsel, filed on May 17, 2022 with this Court, and the continuance of their own relentless search for said appropriate counsel, as they have no interests adverse to the class.

56. Adequacy of "representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." See Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

57. [NEW] Plaintiffs rightfully claim that they share an identical interest of obtaining the PHEC through this Action, and the class shares the same goals, leading to the reality of little or no potential for conflicting interests.

58. [NEW] Fed. R. Civ. P. 23(g)(3) allows the court to designate the interim counsel, to act on behalf of the class, before ruling on the motion to certify the class.

59. [NEW] Starting August 13, 2021, Plaintiffs contacted over fifty (50) combined attorneys, law firms, civil rights litigants, Law schools, Public Defenders Offices, Prison Projects

and Legal Aid Societies, including the N.A.A.C.P. and the N.J.A.C.L.U., with a high percentage going unanswered, only to receive eleven (11) responses, all declining representation, as a true and accurate copy which is annexed hereto as "**Exhibit H**."

60. Consequently, Plaintiffs having the aforementioned pending Motion for appointment of counsel, coupled with the continuance of said relentless search for appropriate counsel, and reinforced by Fed. R. Civ. P. 23(g)(1), stating a court that certifies a class must appoint class counsel, and Fed. R. Civ. P. 23(g)(3) which allows the court to designate interim counsel, to act on behalf of the class, before ruling on the motion to certify the class, all equates to the aggregate of the Plaintiffs having satisfied the adequacy of representation requirement.

### 5.    Predominance and Superiority – (Fed. R. Civ. P. 23(b)(3))

#### a.    Predominance – (Fed. R. Civ. P. 23(b)(3))

61. Plaintiffs rightfully claim that the questions of law or fact common to the class predominate over any questions affecting only individual members.

62. [NEW] The Plaintiffs and the class have a common legal grievance to which all were identically harmed by the Defendants' conduct, as all proposed class members have identical claims to that of the Plaintiffs, which include but are not limited to:

    a. against the same Defendants, the State of New Jersey, Governor Murphy, Stephen Sweeney, Craig Coughlin, John Does 1-10 and Jane Does 1-10 for their conduct,

    b. pursuant to the identical statutes involving fundamental rights claims under the New Jersey and U.S. Constitutions, 42 U.S.C. § 1983, and the Civil Rights Act and

    c. involving a proposed class made up of inmates, incarcerated during the enactment of the Covid-19 Legislation and the signing of EO 103, declaring a public health emergency, and/or the signing of EO 280, reenacting the public health emergency declared in EO 103, who where deprived the PHEC based on the annex of their crime and/or length of remaining sentence.

63. [NEW] Furthermore, additional numerous factual and legal issues shared by the Plaintiffs and proposed class, include but are not limited to:

    a. whether the legislative act, specifically the exclusions put forth, were discriminatory in nature and violated Equal Protection within the Civil Rights Act,

    b. whether the Defendants' actions constituted a violation of their fundamental right to Procedural and Substantive Due Process, protected under the U.S. Constitution's 14th Amendment as well as the New Jersey Constitution,

    c. whether the Defendants' actions constituted a violation of their fundamental right by impinging on the Ex Post Facto Clause and Bill of Attainder, Double Jeopardy and the U.S. Constitution's 5th Amendment,

    d. whether the Defendants actions violated the Plaintiffs' and the class's fundamental right to Equal Protection by

12

breaching the Civil Rights Act, the U.S. Constitution's 14th Amendment, as well as the New Jersey Constitution,

e.  the proper method or methods by which to address the Defendants' injurious violations of New Jersey and U.S. Constitutions, 42 U.S.C. § 1983, and the Civil Rights Act as well as the breach of the NJAPA, and by which to measurable relief can be granted and

f.  why Defendants chose to prejudicially deem Plaintiffs and the class ineligible for PHEC.

64.  Predominance is achieved as the Plaintiffs successfully exhibit that "the proposed class is sufficiently cohesive to warrant adjudication by representation." See Iliadis v. Wal-mart Stores, Inc., 191 N.J. 88, 108 (2007) (internal citations omitted).

65.  The above referenced questions of law or fact common sufficiently prove predominant over individual questions, as they are integral issues in the claims of the class.

66.  Courts deciphering federal standards found that "[t]he predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." See In re NASDAQ v. Market-Makers Antitrust Litig., 169 F.R.D. 493, 517 (S.D.N.Y. 1996) (internal citations omitted).

b.  **Superiority – (Fed. R. Civ. P. 23(b)(3))**

67.  Plaintiffs rightfully claim that a class action is superior to all other alternative methods for the fair and efficient adjudication of this controversy.

68.  In order to satisfy superiority, an essential goal of a class action is to maintain "effective judicial administration by saving money and time for parties, and the public, and to

13

promote consistent decisions for people with similar claims." See In re Cadillac, 93 N.J. 412, 430 (1983).

69. Pursuant to Fed. R. Civ. P. 23(b)(3), class action would undisputedly be the superior method of proper and effective means of adjudication due to the reasons, including but not limited to the following:

   a. given the numeric size of individual members of the proposed class,

   b. class action would aid all class members, who lack legal knowledge and financial resources by effectively protecting their rights better than piecemeal litigation,

   c. class action is the best vehicle to address legislative complaints affecting the class from the vast statewide New Jersey prison population,

   d. the prosecution of separate actions, by individual members of a proposed class, who have the same or similar claims, as well as the veracity of the claims for which are presented, would create the risk inconsistent or varying adjudication,

   e. class action would alleviate a potential insurmountable workload for the Court,

   f. it is improbable for the Court to experience complications with the handling of this matter as a class action and

g.  class action would allow for the systematic and accelerated

handling of the claims of the class.

70.   The Third Circuit ruled that superiority insinuates a comparison of alternative procedures

consisting of "(1) an informed consideration of alternative available methods of

adjudication of each issue, (2) a comparison of fairness to all whose interests may be

involved between such alternative methods and a class action, and (3) a comparison of

the efficiency of adjudication of each method." See Katz v. Blanche Corp., 496 F.2d

747, 757 (3d Cir. 1974).

71.   Consequently, Plaintiffs have satisfied the predominance and superiority requirements.

### 1.  [NEW] Ascertainability

72.   [NEW] Plaintiffs rightfully claim the class is defined in a manner that provides the Court

with a facile determination of who is deemed an eligible class member, and who is not.

73.   [NEW] Previous courts have found "the touchstone of ascertainability is whether the

class is sufficiently definite so that it is administratively feasible for the Court to

determine whether a particular individual is a member." See Brecher v. Republic of

Argentina, 806 F.3d 22, 24 (2d Cir. 2015).

74.   [NEW] All male and female inmates currently incarcerated in the State of New Jersey,

having served a minimum of one (1) month during the initial public health emergency,

dated March 9, 2020 through June 3, 2021, or a minimum of one (1) month served during

the currently reinstated public health emergency, starting January 11, 2022 and having

remained continuously incarcerated until the termination of the current public health

emergency, are deemed eligible for the class.

15

75.  [NEW] Needing only an inmate's last name, a mere simple online search of incarceration dates can easily be performed on the offender search engine at the NJDOC website, allowing class eligibility to be easily ascertained.[3]

76.  [NEW] The requirement of ascertainability is essential, although not specifically referenced in Rule 23, is fundamental and the "class that Plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling." See McBean v. the City of New York, 228 F.R.D. 487, 492 (S.D.N.Y. 2005). (*Emphasis added*).

77.  [NEW] Consequently, Plaintiffs have satisfied the ascertainability requirement.

**B.   [NEW] Notice to Class Members**

78.  [NEW] Plaintiffs have submitted a proposed Notice to Class Members, in accordance with Fed. R. Civ. P. 23(c)(2)(B) *et seq.* – See Notice to Class Members, a true and accurate copy which is annexed hereto as "**Exhibit G**."

79.  [NEW] Since all potential class members will be currently incarcerated, Plaintiffs maintain that the potential class members will be readily known and identifiable through the offender search engine at the NJDOC website.[4]

80.  [NEW] Consequently, Plaintiffs propose the best and most efficient means to serve the Notice to Class Members would be through electronic communications, via Jpay, as this would alleviate United States Postal Service fees.

81.  [NEW] Plaintiffs further propose that the NJDOC, through said offender search engine, is in the best position to identify and notify the proposed class members, at the expense of the Defendants and their respective offices.

---

[3] https://www20.state.nj.us/DOC_Inmate/inmatesearch
[4] https://www20.state.nj.us/DOC_Inmate/inmatesearch

### C.   [NEW] Class Action Certification

82.   [NEW] This Amended Complaint complies with all general prerequisites for assignment of class action certification in accordance with Fed. R. Civ. P. 23(a) *et seq.* and maintenance of said certification in accordance with Fed. R. Civ. P. 23(b)(3), appointment of Plaintiffs as class representatives and the submittal of proposed Notice to Class Members in accordance with Fed. R. Civ. P. 23(c)(2)(B) *et seq.*

83.   Therefore, after thoroughly satisfying the necessary requirements for certification and maintenance of class action certification, coupled with the submittal of proposed Notice to Class Members, results in the Plaintiffs' demand of certification for this action.

## VIII – ARGUMENTS

### COUNT I

**PLAINTIFFS v. THE STATE OF NEW JERSEY, PHILIP D. MURPHY, STEPHEN SWEENEY, CRAIG COUGHLIN, JOHN DOES 1-10, AND JANE DOES 1-10**
**VIOLATION OF THE NEW JERSEY AND U.S. CONSTITUTIONS**
**Violation of Equal Protection under the Civil Rights Act, N.J.S.A. § 10:6-2, the 14th Amendment and 42 U.S.C.S. § 1983**

84.   Plaintiffs adopt and incorporate the above allegations in the above paragraphs as though each were individually stated herein at length.

85.   [NEW] Defendant Murphy, as the governor of the State of New Jersey and while in his official capacity, is granted through the New Jersey Constitution's Art. V, § 1, para. 14(b)(1), the power to return any legislation unsigned if it is deemed to be repugnant and violates the Equal Protection Clause of both the New Jersey and U.S. Constitutions, and by signing, and not returning the Covid-19 Legislation unsigned, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally

17

impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

86.   [NEW] Defendant Sweeney, as the former President of the New Jersey Senate and while in his official capacity, was granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the Equal Protection Clause of both the New Jersey and U.S. Constitutions, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

87.   [NEW] Defendant Coughlin, as the Speaker of General Assembly and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the Equal Protection Clause of both the New Jersey and U.S. Constitutions, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

88.   [NEW] Defendants, collectively in their official capacity, failed to perform their administrative and ministerial duties to investigate all legislation, as Defendants Sweeney and Coughlin's failure to reject, or Governor Murphy's failure to veto any legislation that contains unconstitutional classification contradicting the Civil Rights Act, 42 U.S.C.S. § 1983 and the Equal Protection Clause of both the New Jersey and U.S. Constitutions,

18

particularly the 14th Amendment, to be "similarly situated groups need not be identical in make up, they need only share commonalities that merit similar treatment." See Labella Winnetka v. Vill. Of Winnetka, 628 F.3d 937, 942 (7th Cir. 2016).

89. Defendants, by creating sanctions, provisions and exclusions to the Covid-19 Legislation, severed Plaintiffs and the class by violating their Civil Rights to equal protection, put forth by the Civil Rights Act and the U.S. Constitution, by creating an irrational classification and an unwarranted discriminatory animus, arbitrarily between persons, who are similarly situated, "when a State adopts suspect classifications or attempts to regulate a fundamental right, the law is subject to strict scrutiny." See Englewood Cliffs v. Englewood, 257 N.J. Super. 413, 466 (App. Div. 1992).

90. [NEW] Defendants failed to perform their investigative and ministerial duties in the ratification, by Defendants Sweeney and Coughlin, and enacted by Governor Murphy, of the Covid-19 Legislation and to perform their absolute legal obligation thus violated Plaintiffs and the class, their rights under the New Jersey Civil Rights Act, 42 U.S.C.S. § 1983 and the U.S. Constitution, particularly the 14th Amendment's Equal Protection Clause.

91. [NEW] Plaintiffs and the class, at the mercy of the Covid-19 Legislation, put forth by Defendants, violated the Civil Rights Act and the U.S. Constitution's Equal Protection Clause, through demonstrating discriminatory animus and prejudice by denying the Plaintiffs' qualified right to the PHEC put forth in the Covid-19 Legislation, as Plaintiffs languished through both requirements of N.J.S.A. § 30.4-123.100(1)(a) *et seq.*

92. Defendants, by treating Plaintiffs as a classification as opposed to an individual, violated the clause of the U.S. Constitution's 14th Amendment stating, "no State shall deny to any

19

person within its jurisdiction the equal protection of the laws which essentially a direction to all persons similarly situated should be treated alike." See also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

93.    [NEW] Defendants further violated Plaintiffs' and the class's Civil Rights under the Civil Rights Act and Equal Protection Clause of the U.S. Constitution by creating sanctions, provisions and exclusions to the Covid-19 Legislation against the remedial goal of uniformity to all similarly situated persons and to operate prospectively, with the Defendants' intent to apply additional wanton punishment onto said Plaintiffs, and the class, solely based on the annex of their crime and/or the length of remaining sentence, stripping them of their qualified rights to the PHEC.

94.    Defendants additionally violated Plaintiffs' rights, analogous to the guarantee of equal protection under the U.S. Constitution's 14th Amendment by denying Plaintiffs' qualified right to the PHEC despite meeting said requirements of the Covid-19 Legislation, possessing the same rights, under the same circumstances, to achieve balance and uniformity embodied in the U.S. Constitution's 14th Amendment which states, "No State shall . . . deny to any person within its jurisdiction the equal protection of the law."

95.    Defendants, by denying Plaintiffs' qualified rights to the PHEC, created a disability to the Plaintiffs' capacity for a proper rehabilitation by demonstrating discriminatory animus and prejudice by the exclusion from said credits after Plaintiffs met aforementioned requirements.

96.    [NEW] Defendants violated Plaintiffs' rights under the Civil Rights Act and Equal Protection Rights, under the 14th Amendment, by creating sanctions, provisions and exclusions to deny the Plaintiffs of their qualified rights to the PHEC, thus denying their

natural rights and justice, marked by consideration for what is fair, equitable, and impartial, unhampered by technical rules the law may have devised to limit the recovery of what is just due.

97.    While other similarly situated individuals, who fell outside the scope of the exclusions, were furnished with said PHEC, the Plaintiffs were denied their quantium meruit by the Defendants violating their unalienable rights of people enumerated in the Declaration of Independence in a manner inconsistent with the equal rights of others similarly situated.

98.    [NEW] Defendants' actions violate the Civil Rights Act and the U.S. Constitution, particularly the 14th Amendment, by their discrimination against Plaintiffs' disability, for which the Defendants created, and pursuant to the Civil Rights Act stating that freedom from discrimination of any kind is a Civil Right.

99.    Defendants were prejudicial and acted discriminatorily and in malice or accompanied by a wanton disregard of individuals who foreseeably might be harmed through the culpable acts, sanctions, provisions and exclusions used to exclude the Plaintiffs, solely based on the annex of their crime and/or length of remaining sentence.

100.    Defendants aided and abetted the flagrant discrimination against Plaintiffs and the class, all the while violating their rights to equal protection, substantive due process, and procedural due process, such that the impact of the Defendants' malfeasance was magnified.

101.    Such policies, sanctions, provisions, exclusions and legislation on the part of the Defendants' continued deliberate indifference to Plaintiffs' and the class's Constitutional Rights with such egregious character as to shock the conscience.

102. The acts committed in creation of sanctions, provisions, exclusions and legislation implemented, maintained and/or endorsed by Defendants, shock the conscience and constitute intentional cruel and unusual punishment, continued deliberate indifference to Plaintiffs and the class, in addition to an unnecessary, wanton infliction of harm for no good faith purpose, in violation of Plaintiffs', and the class's, Constitutional Rights, including but not limited to the well established right to be free of cruel and unusual punishment, guaranteed by Art. I, para. 12 of the New Jersey Constitution and the right to substantive due process, guaranteed by Art. I, para. 1 of the New Jersey Constitution.

103. Such acts constituted a violation of the New Jersey Constitution, particularly the Civil Rights Act, and further in violation of New Jersey Statutes and the U.S. Constitution.

104. [NEW] The Plaintiffs enjoin this court of law as a judicial remedy to prevent conduct contrary to equity and good conscience to impose a mandatory declaratory relief requiring positive action to ensure the preservation of Civil Rights and Equal Protection, guaranteed by the New Jersey and U.S. Constitutions, by ordering Governor Murphy, in his official capacity, and any subordinate officials, to perform a ministerial act in amending the Covid-19 Legislation or for this District Court, through its judicial capacity, by severing the unconscionable exclusions, as seen in N.J.S.A. § 30.4-123.100(1)(b)(2) and (1)(d), in order to allow a currently unconstitutionally impermissible legislation to move forward as Constitutional, and it must be acknowledged that "if the court determines that the [legislation] is both substantively and procedurally unconscionable, it must next consider whether it should sever the unconscionable provisions from the broader agreement." See Jean v. Buckwell Univ., 2021 U. S. Dist. Lexis 73384, *45 (3d Cir. 2021).

22

## COUNT II

## PLAINTIFFS v. THE STATE OF NEW JERSEY, PHILIP D. MURPHY, STEPHEN SWEENEY, CRAIG COUGHLIN, JOHN DOES 1-10, AND JANE DOES 1-10
## VIOLATION OF THE NEW JERSEY AND U.S. CONSTITUTIONS
### Violation of Due Process

105. Plaintiffs adopt and incorporate the above allegations in the above paragraphs as though each were individually stated herein at length.

106. [NEW] Defendant Murphy, as governor of the State of New Jersey and while in his official capacity, is granted through the New Jersey Constitution's Art. V, § 1, para. 14(b)(1), the power to return any legislation unsigned if it is deemed to be repugnant and violates New Jersey and U.S. Constitutional Rights under 42 U.S.C.S. § 1983 and for the deprivation of Plaintiffs' qualified rights and privileges of Due Process protected by the New Jersey Constitution's Art. I, para. 1 and the U.S. Constitution's Art. I, § 10, and by signing, and not returning the Covid-19 Legislation unsigned, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

107. [NEW] Defendant Stephen Sweeney, as President of the New Jersey Senate and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates New Jersey and U.S. Constitutional Rights under 42 U.S.C.S. § 1983 and for the deprivation of Plaintiffs' qualified rights and privileges of Due Process protected by the New Jersey Constitution's Art. I, para. 1 and the U.S. Constitution's Art. I, § 10, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the

23

Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

108. [NEW] Defendant Craig Coughlin, as the Speaker of General Assembly and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates New Jersey and U.S. Constitutional Rights under 42 U.S.C.S. § 1983 and for the deprivation of Plaintiffs' qualified rights and privileges of Due Process protected by the New Jersey Constitution's Art. I, para. 1 and the U.S. Constitution's Art. I, § 10, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

109. [NEW] The actions of Defendants Sweeney and Coughlin in ratifying, and failing to reject, the Covid-19 Legislation, and Governor Murphy in signing, and not vetoing, the Covid-19 Legislation, which contained unconstitutional exclusions, thus creating an unconscionable severed class, and while the Plaintiffs not only met the requirements of said legislation, they all languished under those requirements for greater than two years, and placed a legitimate claim to the property interests of the PHEC making the credits more than a desire, but a 'qualified right' emphasizing that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "must, instead have a legitimate claim of entitlement to it." See Ingraham v. Wright, 43 U.S. 651, 672 (1977).

110. [NEW] The actions of Defendants Sweeney and Coughlin in ratifying, and failing to reject, the Covid-19 Legislation, and Governor Murphy in signing, and not vetoing, the Covid-19 Legislation, violated the fundamental rights of Plaintiffs' procedural due process by demonstrating discriminatory animus and prejudice toward the Plaintiffs by denying their fundamental right of fair, just and non-arbitrary procedural government action guaranteed under the U.S. Constitution's 14th Amendment by denying the Plaintiff's qualified right to the PHEC while other similarly situated inmates received the awarded credits.

111. [NEW] The Plaintiffs were deprived of their qualified right to the PHEC, by the actions of Defendants Sweeney and Coughlin in ratifying, and failing to reject, the Covid-19 Legislation, and Governor Murphy in signing, and not vetoing, the Covid-19 Legislation, which contained unconstitutional sanctions, provisions and exclusions thus creating an unconscionable severed class with an arbitrary and unjust punishment so to shock the conscience because "the due process clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedure used to implement them" and "the requirement[s] of substantive due process are met if there is some basis for the challenged decision." See Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010); see also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001).

112. Defendants' acts of sanctions, provisions and exclusions, designed to exclude Plaintiffs and the class their qualified right to PHEC, in creating the Covid-19 Legislation which bore no rational relationships to the remedial goal of said qualified right to the PHEC creating an unnecessary, wanton punishment to Plaintiffs and the class, "where a provision or sanction bears no rational relationship to the remedial goal only to be

25

explained as evidencing an intent to punish, it will be held to constitute punishment for constitutional purposes." See United States v. Halper, 490 U.S. 435, 448 (1989).

113. The Halper Court also went on to hold that "Double Jeopardy bars the government from subjecting [anyone] who has already been punished for his crimes, to an additional civil sanction which may not fairly be characterized as remedial, but only as a deterrent or retribution." See Doe v. Poritz, 142 N.J. 1, 62 (1995); see also Halper, 490 U.S. at 448).

114. [NEW] The Plaintiffs, by meeting the requirements of the Covid-19 legislation, were denied their qualified right to the PHEC by the actions of Defendants Sweeney and Coughlin in ratifying, and failing to reject, the Covid-19 Legislation, and Governor Murphy in signing, and not vetoing, the Covid-19 Legislation, which contained unconstitutional exclusions thus creating a unconscionable severed class, significantly impinges on the liberty interest of the Plaintiffs who are entitled to the protection of the procedures guaranteed by the New Jersey Constitution and the U.S. Constitution's 14th Amendment and Equal Protection Clause because "no State shall deny to an persons within its jurisdiction the equal protection of the laws which essentially a direction to all persons similarly situated should be treated alike." See Cleburne, 473 U.S. at 439.

115. Defendants' acts of sanctions, provisions and exclusions, were motivated by actual malice or accompanied by a wanton and willful disregard of Plaintiffs and the class, who where harmed by said sanctions, provisions and exclusions with the intent by the Defendants to create arbitrary and unjust actual punishment, as the role of these constitutional provisions as protectors of individual rights must always be fully enforced, care should be exercised not to convert them into obstacles that prevent the enactment of honestly-motivated remedial legislation by subjecting laws to test unsuited to the

26

underlying purpose of these constitutional provisions. See Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).

116. Such sanctions, provisions, exclusions and legislation on the part of the Defendants' continued deliberate indifference to Plaintiffs' Constitutional Rights under 42 U.S.C.S. § 1983 and for the deprivation of Plaintiffs' qualified rights and privileges of Due Process protected by the New Jersey Constitution's Art. I, para. 1 and the U.S. Constitution's Art. I, § 10 portrayed egregious character as to shock the conscience.

117. Defendants aided and abetted the flagrant discrimination against Plaintiffs and the class, all the while violating their rights to equal protection, substantive due process, and procedural due process, such that the impact of the Defendants' malfeasance was magnified.

118. Such policies, sanctions, provisions, exclusions and legislation on the part of the Defendants' continued deliberate indifference to Plaintiffs' and the class's Constitutional Rights with such egregious character as to shock the conscience.

119. The acts committed in creation of sanctions, provisions, exclusions and legislation implemented, maintained and/or endorsed by Defendants, shock the conscience and constitute intentional cruel and unusual punishment, continued deliberate indifference to Plaintiffs and the class, in addition to an unnecessary, wanton infliction of harm for no good faith purpose, in violation of Plaintiffs' and the class's Constitutional Rights, including but not limited to the well established right to be free of cruel and unusual punishment, guaranteed by Art. I, para. 12 of the New Jersey Constitution and the right to substantive due process, guaranteed by Art. I, para. 1 of the New Jersey Constitution.

120. Such acts constituted a violation of the New Jersey Constitution, particularly Art. I, para. 1, and further in violation of New Jersey Statutes and the U.S. Constitution.

121. [NEW] The Plaintiffs enjoin this court of law as a judicial remedy to prevent conduct contrary to equity and good conscience to impose a mandatory declaratory relief requiring positive action to ensure the preservation of Civil Rights and Equal Protection, guaranteed by the New Jersey and U.S. Constitutions, by ordering Governor Murphy, in his official capacity, and any subordinate officials, to perform a ministerial act in amending the Covid-19 Legislation or for this District Court, through its judicial capacity, by severing the unconscionable exclusions, as seen in N.J.S.A. § 30.4-123.100(1)(b)(2) and (1)(d), in order to allow a currently unconstitutionally impermissible legislation to move forward as Constitutional, and it must be acknowledged that "if the court determines that the [legislation] is both substantively and procedurally unconscionable, it must next consider whether it should sever the unconscionable provisions from the broader agreement." See Jean, U. S. Dist. Lexis 73384, at *45.

## COUNT III

### PLAINTIFFS v. THE STATE OF NEW JERSEY, PHILIP D. MURPHY, STEPHEN SWEENEY, CRAIG COUGHLIN, JOHN DOES 1-10, AND JANE DOES 1-10
### VIOLATION OF THE NEW JERSEY AND U.S. CONSTITUTIONS
### Violation of Double Jeopardy and the Ex Post Facto Clause

122. Plaintiffs adopt and incorporate the above allegations in the above paragraphs as though each were individually stated herein at length.

123. [NEW] Defendant Murphy, as the governor of the State of New Jersey and while in his official capacity, is granted through the New Jersey Constitution's Art. V, § 1, para.

14(b)(1), the power to return any legislation unsigned if it is deemed to be repugnant and violates the New Jersey Constitution's Art. IV, § 7, para. 3, and the U.S. Constitution's Art. I, § 10, cl. 1, by impinging on the Ex Post Facto Clause and Bill of Attainder, and by signing, and not returning the Covid-19 Legislation unsigned, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

124. [NEW] Defendant Stephen Sweeney, as President of the New Jersey Senate and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the New Jersey Constitution's Art. IV, § 7, para. 3, and the U.S. Constitution's Art. I, § 10, cl. 1, by impinging on the Ex Post Facto Clause and Bill of Attainder, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

125. [NEW] Defendant Craig Coughlin, as the Speaker of General Assembly and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the New Jersey Constitution's Art. IV, § 7, para. 3, and the U.S. Constitution's Art. I, § 10, cl. 1, by impinging on the Ex Post Facto Clause and Bill of Attainder, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation,

29

constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

126. [NEW] The actions of Defendants Sweeney and Coughlin in ratifying, and failing to reject, the Covid-19 Legislation, and Governor Murphy in signing, and not vetoing, the Covid-19 Legislation, which contained unconstitutional exclusions, thus creating an unconscionable severed class, could only be determined as purposeful, additional and continued punishment imposed on the Plaintiffs as the exclusions are not related to the legitimate goal, further reinforced by this Third Circuit stating that "if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court may permissibly infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees." See Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005).

127. Defendants violated Plaintiffs' rights under both the New Jersey Constitution's Art. IV, § 7, para. 3, and the U.S. Constitution's Art. I, § 10, cl. 1, by impinging on the Ex Post Facto Clause and Bill of Attainder by creating sanctions, provisions and exclusions to eliminate the eligibility for the Plaintiffs' qualified right to the PHEC thus resulting in additional time served in prison outside of the scope of the annex of their sentence.

128. [NEW] Defendants, by creating sanctions, provisions and exclusions to the Covid-19 Legislation, violated the provisions of the U.S. Constitution's Art. I, § 9, cl. 3, providing that "no Bill of Attainder . . . shall be passed" causing a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provisions of the protection of a judicial trial." See Nixon v. Admin. of Gen. Servs., 433 U.S. 425, 468 (1977).

30

129. Defendants, by creating sanctions, provisions and exclusions to the Covid-19 Legislation, excluded Plaintiffs and the class outside of the scope of the Covid-19 Legislation's remedial goal of providing a qualified right to an incarcerated inmate, violated Plaintiffs' and the class's right to Double Jeopardy protection pursuant to the New Jersey Constitution's Art. I, para. 11, and the U.S. Constitution's 5th Amendment Protection and further violates Ex Post Facto and Bill of Attainder Laws by changing the punishment and inflicting a greater punishment than the law annexed to the crime, all the while Plaintiffs and the class retaining clean hands, and by adding additional time to their sentences.

130. Defendants violated the 'Additional Punishment' clause of the Ex Post Facto Law by excluding Plaintiffs of their qualified right to the PHEC, creating an additional punitive impact and enacting retribution and/or an accomplished deterrence as, "imprisonment is a very special deterrent consequence and the Ex Post Facto context, as well as Double Jeopardy, and other context is conclusively punishment." See California Dep't of Corrections v. Morales, 514 U.S. 499 (1995).

131. The Halper Courts states "Double Jeopardy bars the government from subjecting [anyone] who has already been punished for his crime, to an additional civil sanction which may not fairly be characterized as remedial, but only as a deterrent or retribution." See Poritz, 142 N.J. at 62; see also Halper, 490 U.S. at 448.

132. Defendants, by creating sanctions, provisions and exclusions to the Covid-19 Legislation, placed labels and/or characterized Plaintiffs, solely based on the length of sentence and/or annex of crime, violated the Plaintiffs' rights under the New Jersey Constitution and the U.S. Constitution.

133. Placing labels on the Plaintiffs does not "immunize a law from scrutiny under the Ex Post Facto Clause. Subtle Ex Post Facto violations are no more permissible than overt ones." See Collins v. Youngblood, 497 U.S. 37, 46 (1990).

134. The Plaintiffs', and the class's, rights to Double Jeopardy Protection under the New Jersey Constitution Art. I, para. 11, and the U.S. Constitution's 5th Amendment were violated.

135. Plaintiffs' and the class's rights to the Ex Post Facto Clause and Bill of Attainder under the New Jersey Constitution's Art. IV, § 7, para. 3, and the U.S. Constitution's Art. I, § 10, cl. 1, were violated.

136. Defendants aided and abetted the flagrant discrimination against Plaintiffs and the class, all the while violating their rights to equal protection, substantive due process, and procedural due process, such that the impact of the Defendants' malfeasance was magnified.

137. Such policies, sanctions, provisions, exclusions and legislation on the part of the Defendants' continued deliberate indifference to Plaintiffs' and the class's Constitutional Rights with such egregious character as to shock the conscience.

138. The acts committed in creation of sanctions, provisions, exclusions and legislation implemented, maintained and/or endorsed by Defendants, shock the conscience and constitute intentional cruel and unusual punishment, continued deliberate indifference to Plaintiffs and the class, in addition to an unnecessary, wanton infliction of harm for no good faith purpose, in violation of Plaintiffs' and the class's Constitutional Rights, including but not limited to the well established right to be free of cruel and unusual

punishment, guaranteed by Art. I, para. 12 of the New Jersey Constitution and the right to substantive due process, guaranteed by Art. I, para. 1 of the New Jersey Constitution.

139.  Such acts constituted a violation of the New Jersey Constitution, particularly Art. I, para. 11 and Art. IV, § 7, para. 3, and further in violation of New Jersey Statutes and the U.S. Constitution.

140.  [NEW] The Plaintiffs enjoin this court of law as a judicial remedy to prevent conduct contrary to equity and good conscience to impose a mandatory declaratory relief requiring positive action to ensure the preservation of Civil Rights and Equal Protection, guaranteed by the New Jersey and U.S. Constitutions, by ordering Governor Murphy, in his official capacity, and any subordinate officials, to perform a ministerial act in amending the Covid-19 Legislation or for this District Court, through its judicial capacity, by severing the unconscionable exclusions, as seen in N.J.S.A. § 30.4-123.100(1)(b)(2) and (1)(d), in order to allow a currently unconstitutionally impermissible legislation to move forward as Constitutional, and it must be acknowledged that "if the court determines that the [legislation] is both substantively and procedurally unconscionable, it must next consider whether it should sever the unconscionable provisions from the broader agreement." See Jean, U. S. Dist. Lexis 73384, at *45.

## COUNT IV

**PLAINTIFFS v. THE STATE OF NEW JERSEY, PHILIP D. MURPHY, STEPHEN SWEENEY, CRAIG COUGHLIN, JOHN DOES 1-10, AND JANE DOES 1-10**
**VIOLATION OF THE NEW JERSEY AND U.S. CONSTITUTIONS**
**Violation of the Administrative Procedure Act, N.J.S.A. § 52:14B1-B15**

33

141. Plaintiffs adopt and incorporate the above allegations in the above paragraphs as though each were individually stated herein at length.

142. [NEW] Defendant Murphy, as the governor of the State of New Jersey and while in his official capacity, is granted through the New Jersey Constitution's Art. V, § 1, para. 14(b)(1), the power to return any legislation unsigned if it is deemed to be repugnant and violates the New Jersey and U.S. Constitutions, in addition to the NJAPA, particularly those actions to encumber (2) is intended to be applied uniformly to all situated persons and (3) designed to operate only prospectively, and by signing, and not returning the Covid-19 Legislation unsigned, he failed to exercise his absolute legal duty, as a supervisor to his subordinates, Defendants Sweeney and Coughlin, to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

143. [NEW] Defendant Stephen Sweeney, as President of the New Jersey Senate and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the New Jersey and U.S. Constitutions, in addition to the NJAPA, particularly those actions to encumber (2) is intended to be applied uniformly to all situated persons and (3) designed to operate only prospectively, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

34

144. [NEW] Defendant Craig Coughlin, as the Speaker of General Assembly and while in his official capacity, is granted through the New Jersey Constitution's Art. IV, § 4, para. 6, the power to reject any legislation if it is deemed to be repugnant and violates the New Jersey and U.S. Constitutions, in addition to the NJAPA, particularly those actions to encumber (2) is intended to be applied uniformly to all situated persons and (3) designed to operate only prospectively, and by ratifying, and not rejecting the Covid-19 Legislation, he failed to exercise his absolute legal duty to the Plaintiffs by allowing the enactment of the constitutionally impermissible legislation, constituting a deliberate indifference by creating an unconscionable severed class, resulting in damages to the Plaintiffs.

145. [NEW] Defendants, in their official capacity, failed to perform their administrative and ministerial duties to investigate all legislation, as Defendants Sweeney and Coughlin's failure to reject, or Governor Murphy's failure to veto any legislation that contains unconstitutional provisions for which creates unconscionable sanctions, provisions and exclusions within the Covid-19 Legislation, violated the NJAPA, particularly those actions to encumber (2) is intended to be applied uniformly to all situated persons and (3) designed to operate only prospectively.

146. Defendants violated Plaintiffs' right for Equal Protection by breaching the NJAPA by reflecting sanctions, provisions and exclusions to the Covid-19 Legislation that does not express the remedial goal of the PHEC that is expressed in the original EO 103, as seen in Exhibit A, creating a constituted legislatively imposed punishment and significant discriminative material change from a past agency position on the identical subject matter and demonstrated discriminatory animus and prejudice toward Plaintiffs.

147. [NEW] Defendants Sweeney and Coughlin, in their official capacity, failed to perform their administrative and ministerial duties to investigate all legislation that contains unconstitutional provisions in ratifying and failing to reject the Covid-19 Legislation in its unconstitutional form thus violating the NJAPA, while Governor Murphy's administrative and ministerial actions breached and violated clearly established constitutional rights of the Plaintiffs in a supervisory capacity to where he failed to veto an unconstitutional legislation that was ratified by his subordinates.

148. Defendants administrative and ministerial actions violated the Plaintiffs' rights and showed wanton bias discrimination in the creation of sanctions, provisions and exclusions to the Covid-19 Legislation by providing provisions to exclude Plaintiffs and the class, their qualified right to the PHEC, and under these conditions, created by the Defendants, Plaintiffs endured violations of the Double Jeopardy Protection, Equal Protection Clause and the Procedural Due Process, protected under the New Jersey Constitution and the U.S. Constitution.

149. Defendants violated NJAPA by breaching the procedures required in creation of legislation causing wanton and unjustified punishment to Plaintiffs and the class.

150. Defendants aided and abetted the flagrant discrimination against Plaintiffs and the class, violating rights to Double Jeopardy and Ex Post Facto, all the while further violating their rights to equal protection, substantive due process, and procedural due process, such that the impact of the Defendants' malfeasance was magnified.

151. Such policies, sanctions, provisions, exclusions and legislation on the part of the Defendants' continued deliberate indifference to Plaintiffs' and the class's Constitutional Rights, with such egregious character as to shock the conscience.

152. The acts committed in creation of sanctions, provisions, exclusions and legislation implemented, maintained and/or endorsed by Defendants, shock the conscience and constitute intentional cruel and unusual punishment, continued deliberate indifference to Plaintiffs and the class, in addition to an unnecessary, wanton infliction of harm for no good faith purpose, in violation of Plaintiffs' and the class's Constitutional Rights, including but not limited to the well established right to be free of cruel and unusual punishment, guaranteed by Art. I, para. 12 of the New Jersey Constitution and the right to substantive due process, guaranteed by Art. I, para. 1 of the New Jersey Constitution.

153. Such acts constituted a violation of the New Jersey Constitution, particularly Civil Rights Act, and further in violation of New Jersey Statutes and the New Jersey and U.S. Constitutions.

154. [NEW] The Plaintiffs enjoin this court of law as a judicial remedy to prevent conduct contrary to equity and good conscience to impose a mandatory declaratory relief requiring positive action to ensure the preservation of Civil Rights and Equal Protection, guaranteed by the New Jersey and U.S. Constitutions, by ordering Governor Murphy, in his official capacity, and any subordinate officials, to perform a ministerial act in amending the Covid-19 Legislation or for this District Court, through its judicial capacity, by severing the unconscionable exclusions, as seen in N.J.S.A. § 30.4-123.100(1)(b)(2) and (1)(d), in order to allow a currently unconstitutionally impermissible legislation to move forward as Constitutional, and it must be acknowledged that "if the court determines that the [legislation] is both substantively and procedurally unconscionable, it must next consider whether it should sever the

37

unconscionable provisions from the broader agreement." See Jean, U. S. Dist. Lexis 73384, at *45.

## IX - PRAYER FOR RELIEF

155. Plaintiffs demand the following from the Court:

    a. Acknowledge the certification and maintenance of a class action, pursuant to Fed. R. Civ. P. 23(a) *et seq*. and Fed. R. Civ. P. 23(b)(3).

    b. Providing appropriate counsel, pursuant to Fed. R. Civ. P. 23(g)(1),

    c. Designating Plaintiffs as representatives of the class,

    d. Awarding of a jury trial,

    e. Deem all New Jersey inmates who served one (1) month during one of the public health emergencies eligible to receive four (4) months of Covid-19 Public Health Emergency Credits, and inmates who served two (2) months during said emergencies eligible to receive eight (8) months of said credits from both the maximum and minimum term of sentence.

## X – CONCLUSION

156. WHEREFORE, Defendants are found in direct contempt for obstruction of justice for their willful disregard to provide Plaintiffs and the class their qualified right to Public Health Emergency Credits, resulting in Plaintiffs', and the class's, damages arising from

aforementioned injuries, leading to their demand for declaratory relief against

Defendants, and asking the Court to provide relief sought in the Prayer for Relief herein.

Pursuant to 28 U.S.C.S. § 1746, Plaintiffs, Michael Marrara and Michael Dotro, declare under

the penalty of perjury, that the forgoing statements to be true and correct.

Dated: July 6, 2022

By: _____

    Michael Marrara # 1171151
    East Jersey State Prison
    1100 Woodbridge Rd.
    Rahway, New Jersey 07065

By: _____

    Michael Dotro # 1131899
    East Jersey State Prison
    1100 Woodbridge Rd.
    Rahway, New Jersey 07065

Michael Marrara # 1171151
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, New Jersey 07065

Michael Dotro # 1131899
East Jersey State Prison
1100 Woodbridge Rd.
Rahway, New Jersey 07065

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Case No.: 2:22-cv-02056-ES-ESK
Hon. Esther Salas, U.S.D.J.
Hon. Edward S. Kiel, U.S.M.J.

| | |
|---|---|
| MICHAEL MARRARA,<br>MICHAEL DOTRO,<br><br>   Plaintiffs, On behalf<br>of themselves and all those<br>similarly situated.<br><br>   v.<br><br>THE STATE OF NEW JERSEY,<br>In its Official Capacity;<br>PHILIP D. MURPHY,<br>In his Official Capacity;<br>STEPHEN SWEENEY,<br>In his Official Capacity;<br>CRAIG COUGHLIN,<br>In his Official Capacity;<br>JOHN DOES 1-10,<br>In his Official Capacity;<br>JANE DOES 1-10,<br>In her Official Capacity;<br><br>   Defendants. | CIVIL ACTION<br><br>**APPENDIX IN SUPPORT<br>OF AMENDED COMPLAINT<br>AND JURY TRIAL DEMANDED**<br><br>Volume I<br>Pa 1 – Pa 54 |

# Table of Contents

| **Exhibit** | **Date** | **Appendix Page No.** |
|---|---|---|
| A. Executive Order No. 103 | March 9, 2020 | Pa 1 – Pa 5 |
| B. New Jersey Senate Bill No. 2519 | October 19, 2020 | Pa 6 – Pa 19 |
| C. Executive Order No. 244 | June 4, 2021 | Pa 20 – Pa 24 |
| D. Executive Order No. 280 | January 11, 2022 | Pa 25 – Pa 34 |
| E. Dotro Jpay Correspondence | April 24, 2022 | Pa 35 – Pa 36 |
| F. Marrara Jpay Correspondence | May 1, 2022 | Pa 37 – Pa 38 |
| G. Notice to Class Members | N/A | Pa 39 – Pa 42 |
| H. Letters Requesting Counsel | August 13, 2021 – November 26, 2021 | Pa 43 – Pa 54 |